UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

MINT, INC.,

                    Plaintiff,

    - against -

IDDI AMAD a/k/a IDDI AMADU d/b/a
IDDI AMADU INVASION and JOHN DOE
(WHOLESALE SUPPLIER OF IDDI
AMAD),

                    Defendants.
------------------------------------------------------- X

MEMORANDUM
**OPINION AND ORDER**

10 Civ. 9395 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Plaintiff Mint, Inc. ("Mint") has brought suit against pro se defendant Iddi Amad alleging, *inter alia*, copyright and patent infringement. The alleged infringement arises from Amad's sale of unauthorized copies of plaintiff's "Hugging Salt and Pepper Shakers"[1] from his street vendor table at Union Square in New York City. The creator of the sculptural work, Alberto Mantilla, applied for, and was granted, copyright registration for his "Hugging Salt and Pepper

---

[1] The "Hugging Salt and Pepper Shakers" consist of two interlocking, ceramic, anthropomorphic ghost-like figurines which appear to be hugging (the "Hug Shakers"). *See* Ex. 1 to the Civil Complaint ("Compl."). The sculptural work was adapted to use as salt and pepper shakers.

Shakers," effective September 27, 2001.[2] Mantilla assigned his copyright in the Hug Shakers to Mint, effective January 1, 2008.[3] Mantilla has widely advertised his Hug Shakers and sold thousands of units since their introduction in 2002.[4] Plaintiff now seeks a preliminary injunction based on its copyright and design patent infringement causes of action.[5] For the following reasons, plaintiff's motion for a preliminary injunction is granted.

## II. LEGAL STANDARDS

### A. Injunctive Relief

The Supreme Court set forth the following requirements for the issuance of a permanent injunction:

> a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such

---

[2] *See* Mantilla Copyright Registration, Ex. 2 to the Cmpl. The United States Patent Office awarded the Hug design a Design Patent, D464,532 S. *See* Design Patent, Ex. 4 to the Cmpl.

[3] *See* Copyright Assigment from Mantilla to Mint, Ex. 3 to Compl.

[4] *See* Compl. ¶ 19. The Hug Shakers are sold through premium retail channels, such as the Museum of Modern Art MoMA Design Store, at premium prices. *See* Plaintiff's Motion for Preliminary Injunction (the "Motion") at 2.

[5] Although plaintiff's Motion does not specifically state what it seeks to enjoin, presumably plaintiff seeks to enjoin Amad from selling "knock-off" shakers in Union Square or elsewhere.

> as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[6]

In the wake of *eBay*, the Second Circuit re-visited the legal standard to be applied to a motion for preliminary injunctive relief within the context of a copyright infringement case, stating:

> we hold that a district court must undertake the following inquiry in determining whether to grant a plaintiff's motion for a preliminary injunction in a copyright case. First, as in most other kinds of cases in our Circuit, a court may issue a preliminary injunction in a copyright case only if the plaintiff has demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor. Second, the court may issue the injunction only if the plaintiff has demonstrated that he is likely to suffer irreparable injury in the absence of an injunction. The court must not adopt a "categorical" or "general" rule or presume that the plaintiff will suffer irreparable harm . . . Instead, the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of

---

[6] *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)).

3

> hardships tips in the plaintiff's favor. Finally, the court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction.[7]

Thus, "[t]he first consideration in the preliminary injunction analysis is the probability of success on the merits."[8] "In gauging this, . . . courts should be particularly cognizant of the difficulty of predicting the merits of a copyright claim at a preliminary injunction hearing," a difficulty that is compounded when the defendant raises a colorable defense.[9]

> Next, the court must consider whether the plaintiff will suffer irreparable harm in the absence of a preliminary injunction, and the court must assess the balance of hardships between the plaintiff and defendant. Those two items, both of which consider the harm to the parties, are related. The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction. The plaintiff's interest is, principally, a property interest in the copyrighted material. . . . The defendant to a copyright suit likewise has a property interest in his or her work to the extent that work does not infringe the plaintiff's copyright.[10]

---

[7] *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (quotation marks and citations omitted, alteration in original).

[8] *Id.* at 80.

[9] *Id.*

[10] *Id.* at 81 (citation and footnote omitted).

4

> But the above-identified interests are relevant only to the extent that they are not remediable after a final adjudication. Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. In the context of copyright infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion.[11]

"After *eBay*, however, courts must not simply presume irreparable harm."[12]

Rather, a plaintiff must show that, under the circumstances presented, "the failure to issue a[] [preliminary] injunction would actually cause irreparable harm."[13]

### B. Copyright Infringement

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant."[14] With regard to ownership, "[a] certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright . . . ."[15] "To establish infringement,

---

[11] *Id.* (citing *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96-97 (2d Cir. 2002)).

[12] *Id.* at 82 (citing *eBay*, 547 U.S. at 393).

[13] *Id.*

[14] *Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 108-09 (2d Cir. 1999) (citing *Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)).

[15] *Hamil America*, 193 F.3d at 98.

the copyright owner must demonstrate that '(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'"[16]

> Copyright infringement is established when the owner of a valid copyright demonstrates unauthorized copying. Actual copying must be shown, either by direct or indirect evidence. Indirect copying may be shown by demonstrating that the defendant had access to the copyrighted work and that the similarities between the works are probative of copying. If the plaintiff establishes a prima facie case of infringement, the defendant may rebut it by proving the affirmative defense of independent creation. In analyzing this affirmative defense, the fact-finder must be mindful that "subconscious" or "innocent" copying is still copying.[17]

However, "[u]nder the Copyright Act, one may market a product identical to a copyrighted work so long as the second comer designed his product

---

[16] *Yurman Design*, 262 F.3d at 110 (quoting *Hamil America*, 193 F.3d at 99). "Generally, an allegedly infringing work is considered substantially similar to a copyrighted work if the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001).

[17] *Procter & Gamble Co. v. Colgate-Palmolive Co.*, 199 F.3d 74, 77 (2d Cir. 1999) (per curiam) (quotation marks and citations omitted). *Accord Boisson*, 273 F.3d at 269 ("Indirect evidence of access and substantial similarity to the plaintiff's work can 'support an inference' that copying took place.") (quoting *Streetwise Maps, Inc. v. VanDam,Inc.*, 159 F.3d 739, 747 (2d Cir. 1998)).

independently."[18] Thus, "[a] defendant may rebut a prima facie case of copyright infringement by proving independent creation."[19]

## III. DISCUSSION

Plaintiff argues that it is likely to succeed on the merits of its copyright cause of action because it has shown ownership of a valid copyright and infringement of that copyright. The Certificate of Registration appended to plaintiff's Complaint satisfies the ownership prong. With regard to infringement, plaintiff argues that the shakers/figurines sold by defendant satisfy both the access and substantial similarity prongs of the copying test. According to plaintiff, "access is undeniable" given the widespread press and catalogue coverage given to its Hug Shakers.[20] Moreover, the substantial similarity prong is satisfied given that "the accused hug product and the copyrighted Hug sculpture are so strikingly similar that the ordinary observer test is easily met."[21] Having satisfied both the

---

[18] *Yurman Design*, 262 F.3d at 110 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.")).

[19] *Maharam v. Patterson*, 369 Fed. App'x 240, 241 (2d Cir. 2010).

[20] Motion at 5.

[21] *Id.* at 6 ("The two products are nearly identical in scale, anthropomorphic form, interlocking relation and all other substantive, expressive aspects.").

ownership and infringement prongs, plaintiff has shown a likelihood of success on the merits of its copyright claim against defendant.[22]

Furthermore, plaintiff has shown that it will be irreparably harmed without a preliminary injunction. For example, the loss of pricing power resulting from the sale of inexpensive "knock-offs" is, by its very nature, irreparable.[23] Furthermore, defendant operates a cash-only business which makes determining the amount of damages from his infringing conduct especially difficult, if not impossible. As for the balance of hardships, "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against

---

[22] It appears that defendant attempts to assert copyright invalidity as a defense/counterclaim when he states that the concept of the hugging sculpture has its roots in African culture dating back more than five hundred years. *See* Motion in opposition to the motion [for] Preliminary inju[n]ction at 1. While it is true that hugging, per se, is universal, defendant has not shown that plaintiff's particular design – salt and pepper shakers in the form of two ghost-like creatures hugging each other – was taken from the public domain. *See, e.g., Van Cleef & Arpels Logistics, S.A. v. Jewelry*, 547 F. Supp. 2d 356, 364 (S.D.N.Y. 2008) (stating that "the fact that distinguishable clover shapes exist does not constitute evidence that plaintiffs' Design was copied from the public domain"). It is therefore highly unlikely that an invalidity defense based on the public domain would defeat plaintiff's copyright infringement claim.

[23] *See Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (citing *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm); *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (loss of market opportunities cannot be quantified or adequately compensated and is evidence of irreparable harm)).

continuing infringement destroys the business so elected."[24]  Finally, it is undisputed that there is a strong policy in favor of enforcing copyrights.[25]

## IV. CONCLUSION

Plaintiff has met all of the *Salinger* factors for the issuance of a preliminary injunction.  Accordingly, defendant Iddi Amad is hereby enjoined from continuing to produce, manufacture, order, or otherwise procure any more versions of Hug Shakers for future sale.[26]  The Clerk of the Court is directed to close plaintiff's Motion for Preliminary Injunction (Document # 11).  A status conference is scheduled for May 24, 2011, at 4:00 p.m., in Courtroom 15C.

---

[24] *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986).

[25] *See Motown Record Co., L.P. v. iMesh.Com, Inc.*, No. 03 Civ. 7339, 2004 WL 503720, at *7 (S.D.N.Y. Mar. 12, 2004) ("Importantly, plaintiffs assert an action to enforce their U.S. copyrights, an area in which the U.S. has a strong public interest.").

[26] Defendant may sell off his existing inventory but he is ordered not to produce and/or order any more Hug Shakers.  Once defendant's inventory is depleted, he will be enjoined from selling any Hug Shakers until this case is resolved, at which point he may or may not be permanently enjoined from selling Hug Shakers.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:  New York, New York
        May 9, 2011

## - Appearances -

**For Plaintiff:**

Jeffrey Sonnabend, Esq.
Sonnabend Law
600 Prospect Avenue
Brooklyn, NY 11215
(718) 832-8810

**Defendant (Pro Se):**

Iddi Amad
Cooper Square Station
P.O. Box 276
New York, NY 10276